**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ATOS, LLC d/b/a RIDEMETRIC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-06224 |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | Honorable Andrea R. Wood |
| ESURANCE INSURANCE SERVICES, | ) | |
| INC., AND ARITY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

I. The Claims of the '140 and '609 Patents Are Directed to the Abstract Idea of Detecting the Motion or State of a Vehicle and Taking an Action in Response and Are Invalid Under 35 U.S.C. § 101 ...................................................................................2

    A.    Legal Standards ...........................................................................................2

    B.    Claim 1 of the '140 Patent is Representative. ..............................................3

    C.    The Asserted Claims of the '609 and '140 Patents are Directed to the Abstract Idea of Detecting the Motion or State of a Vehicle and Taking an Action in Response. ............................................................................................5

    D.    The Asserted Claims of the '609 and '140 Patents Lack an "Inventive Concept." .7

        1.    The Claims Use Generic, Functional Language. .........................................8

        2.    The Claims Reference Routine, Conventional Technology. ....................10

        3.    The Ordered Combination Provides No Inventive Concept. ....................11

    E.    The Additional Asserted Claims of the '140 and '609 Patents Add No Technical Substance to Claim 1 of the '140 Patent. .................................................11

    F.    The Claims of the '174 Patent are Invalid under 35 U.S.C. § 101. ......................13

        1.    Claim 5 of the '174 Patent is Invalid For the Same Reasons the '140 and '609 Patents Fail to Satisfy §101. ............................................................13

        2.    Claims 1-4 of the '174 Patent are Directed to Patent Ineligible Laws of Nature and Lack Any Inventive Concept .................................................13

II. RideMetric's Breach of Contract Claim Does Not State Sufficient Facts to Establish Breach of a Contract. .............................................................................................16

    A.    Legal Standards .........................................................................................16

    B.    RideMetric's Breach of Contract Claim Fails to Plead Facts Sufficient to Render Its Claim Plausible. ...................................................................................17

III. RideMetric Fails to State a Claim Under the Illinois Trade Secret Act ............................18

    A.    Legal Standards .........................................................................................18

    B.    RideMetric Fails to Plead the Existence of Trade Secrets. ...................................19

IV. CONCLUSION ...........................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC,*
838 F.3d 1253 (Fed. Cir. 2016)...................................................................6, 7

*Affinity Labs of Texas, LLC v. Amazon.com Inc.,*
838 F.3d 1266 (Fed. Cir. 2016)...................................................................8

*Alice Corp. v. CLS Bank Int'l,*
573 U.S. 208 (2014) ................................................................... *passim*

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...................................................................1, 17

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.,*
569 U.S. 576 (2013)...................................................................13

*BASCOM Glob. Internet Servs., Inc. v. AT & T Mobility LLC,*
827 F.3d 1341 (Fed. Cir. 2016)...................................................................11

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)...................................................................1, 16, 19

*Bilski v. Kappos,*
561 U.S. 593 (2010)...................................................................6, 14

*Carpenter v. Aspen Search Advisers, LLC,*
No. 10 C 6823, 2011 WL 1297733 (N.D. Ill. Apr. 5, 2011)............................................18, 19

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
776 F.3d 1343 (Fed. Cir. 2014)...................................................................4

*Covenant Aviation Sec., LLC v. Berry,*
15 F. Supp. 3d 813 (N.D. Ill. 2014) ...................................................................19

*Credit Acceptance Corp. v. Westlake Servs.,*
859 F.3d 1044 (Fed. Cir. 2017)...................................................................6

*CyberSource Corp. v. Retail Decisions, Inc.,*
654 F.3d 1366 (Fed. Cir. 2011)...................................................................4, 6, 13

*Diamond v. Diehr,*
450 U.S. 175 (1981)...................................................................14

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
  815 F. App'x 529 (Fed. Cir. 2020) ..................................................................8

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com,*
  *LLC*, 958 F.3d 1178 (Fed. Cir. 2020) ...........................................................3

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)........................................................... *passim*

*Ennenga v. Starns*,
  677 F.3d 766 (7th Cir. 2012) ........................................................................15

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
  955 F.3d 1317 (Fed. Cir. 2020).....................................................................9

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016).....................................................................2

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
  No. 20-1477 (Fed. Cir. Jan. 13, 2021) ...................................................7, 10

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016)......................................................................6

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015).....................................................................2

*Inteum Co., LLC v. Nat'l Univ. of Singapore*,
  No. C17-1252-JCC, 2017 WL 6611961 (W.D. Wash. Dec. 27, 2017) ..................18

*Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*,
  342 F.3d 714 (7th Cir. 2003) ........................................................................18

*Mission Measurement Corp. v. Blackbaud, Inc.*,
  216 F. Supp. 3d 915 (N.D. Ill. 2016) ..........................................................18

*OIP Techs., Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015)......................................................................5

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*,
  404 F. Supp. 3d 1021 (E.D. Tex. 2019).........................................................5

*Reger Dev., LLC v. Nat'l City Bank*,
  592 F.3d 759 (7th Cir. 2010) ........................................................................17

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)......................................................................9

*Secured Mail Solutions. LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017)..................................................................................10

*Segerdahl Corp. v. Ferruzza*,
   No. 17 CV 3015, 2018 WL 828062 (N.D. Ill. Feb. 10, 2018)..................................18

*Simio, LLC v. FlexSim Software Prod., Inc.*,
   No. 2020-1171, 2020 WL 7703014 (Fed. Cir. Dec. 29, 2020)....................................2

*Stericycle, Inc. v. Carney*,
   No. 12 C 9130, 2013 WL 3671288 (N.D. Ill. July 12, 2013) ..................................17

*Taha v. Int'l Bhd. of Teamsters, Local 781*,
   947 F.3d 464 (7th Cir. 2020) ..................................................................................17

*TDE Petroleum Data Sols., Inc., v. AKM Enter., Inc.*,
   657 F. App'x 991 (Fed. Cir. 2016) ...........................................................................7

*Thermal Zone Products Corp. v. Echo Engineering, Ltd.*,
   No. 93 C 0556, 1993 WL 358148 (N.D. Ill Sept. 14, 1993)..............................18, 20

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016)..............................................................................2, 3

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)....................................................................3, 8, 9, 10

*Univ. of Fla. v. Research Found. v. Gen. Elec. Co.*,
   916 F.3d 1363 (Fed. Cir. 2019)..............................................................................6, 7

**Statutes**

35 U.S.C. § 101............................................................................................ *passim*

Ill. Comp. Stat. Ann. 1065/2(d) ...............................................................................19

iv

## INTRODUCTION

Defendants move to dismiss all counts of RideMetric's Complaint under Fed. R. Civ. P. 12(b)(6) and 35 U.S.C. § 101. RideMetric's patent infringement counts (Counts I-III) should be dismissed under § 101 and *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014), because all three asserted patents recite patent ineligible subject matter. The claims are directed to the abstract idea of detecting the motion or state of a vehicle and taking an action in response, with one patent containing additional claims directed to laws of nature. The asserted claims do not transform these abstract concepts into patent-eligible inventions, as they simply recite functional language and known, conventional technology. The patent counts should thus be dismissed, before costly and time-consuming discovery is required.

RideMetric's breach of contract count (Count IV) and Illinois Trade Secret Act ("ITSA") count (Count V) should be dismissed as well, because the Complaint fails to "state a claim upon which relief can be granted." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007). The Complaint alleges that Defendants breached a mutual non-disclosure agreement by "using" confidential information, but pleads no facts that render plausible such use. Similarly, the Complaint provides no more than the formulaic recitation of the elements of an ITSA claim, failing to identify or plead any facts concerning which, if any, trade secrets are involved or how Defendants purportedly misappropriated them. Because RideMetric has failed to plead "factual content that allows the court to draw the reasonable inference that [Defendants are] liable for the misconduct alleged," Counts IV and V should be dismissed for failing to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## FACTUAL BACKGROUND

RideMetric's Complaint alleges that in 2015 and 2016, RideMetric engaged in a series of discussions with Allstate, entered into a mutual non-disclosure agreement (the "MNDA"), and

purportedly provided Allstate with confidential information related to RideMetric's "technology for smartphones that can accurately assess and score driver behavior." (Dkt. No. 1 ("Compl.") at ¶¶ 2, 51-52, 55, 59-61.) The Complaint further alleges that Defendants' Drivewise and DriveSense apps infringe three patents related to detecting the motion or state of a vehicle and taking an action in response (U.S. Patent Nos. 8,527,140 ("the '140 patent"), 9,152,609 ("the '609 patent"), and 9,846,174 ("the '174 patent")), and that Defendants breached the MNDA and misappropriated RideMetric's trade secrets. (*Id.* ¶¶ 90, 124, 146, 176, 189; *see* Compl. Exs. A ('140 patent); B ('609 patent); C ('174 patent).) Drivewise and DriveSense are smartphone-based apps that Defendants employ as part of safe driving/usage based insurance programs.

## ARGUMENT

**I.** **The Claims of the '140 and '609 Patents Are Directed to the Abstract Idea of Detecting the Motion or State of a Vehicle and Taking an Action in Response and Are Invalid Under 35 U.S.C. § 101.**

### A. Legal Standards

Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate where the asserted patents recite ineligible subject matter under 35 U.S.C. § 101. *See, e.g.*, *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097-98 (Fed. Cir. 2016); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613-14 (Fed. Cir. 2016).

The Supreme Court's *Alice* decision provides a two-step framework for this analysis. *See* 573 U.S. at 217-18. At step one, the court examines "'what the patent asserts to be the focus of the claimed advance over the prior art' . . . to determine whether the claim's 'character as a whole' is directed to ineligible subject matter." *Simio, LLC v. FlexSim Software Prods., Inc.*, No. 2020-1171, 2020 WL 7703014, at *4 (Fed. Cir. Dec. 29, 2020) (citations omitted). Excluded subject matter includes "laws of nature, natural phenomena, and abstract ideas." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1345-46 (Fed. Cir. 2015).

2

Abstract ideas, in turn, include "longstanding commercial practices" and other "well-understood, routine, conventional" activities. *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1182-83 (Fed. Cir. 2020). The focus for this inquiry is on the claim language, with guidance as needed from the specification. *See In re TLI*, 823 F.3d at 611-12.

If claims are directed to an abstract idea, at step two the court determines whether the claims disclose an "inventive concept" that transforms the abstract idea into a patent-eligible application of that idea. *Alice*, 573 U.S. at 217-18. The inventive concept cannot stem from the abstract idea itself, and it is not enough to implement an abstract idea with "well-understood," "routine," or "conventional" technology. *Id.* at 221-26 (citation omitted). Nor do claims become eligible merely by reciting "generic functional language to achieve [the] purported solutions" without claiming "*how* the desired result is achieved." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016)). "To save a patent at step two, an inventive concept must be evident in the claims." *Id.* at 1338.

**B.     Claim 1 of the '140 Patent is Representative.**

For the purposes of validity under § 101, claim 1 of the '140 patent, reproduced below is representative of the asserted claims of the '609 and '140 patents:

A method of performing one or more actions on a portable device carried by an individual, comprising:

monitoring at least one operation indicator continuously and transparently to the individual, wherein the at least one operation indicator is created by an on-board component of the portable device when the portable device is located inside a vehicle;

detecting when the at least one operation indicator meets one or more predetermined criteria;

determining one or more operational states of the vehicle based on the one or more predetermined criteria;

3

> determining the one or more actions based on the one or more operational states of the vehicle;
>
> performing the one or more actions on the portable device;
>
> determining the one or more actions based on at least one change in the operational state of the vehicle occurs; and
>
> wherein the at least one change in the operational state comprise at least one of the following: a change from a vehicle is moving state to a vehicle movement is lingering state; a change from a vehicle engine is on state to an engine is off state; a change from a vehicle is moving state to a vehicle is stationary state; a change from a vehicle speed is below a predetermined speed limit state to a vehicle speed is above the predetermined limit; a change from a vehicle is stationary state to a vehicle is moving state; a change from an engine is off state to an engine is on state; and a change from an engine is off state to a vehicle is moving state.

The remaining asserted claims add, at most, only small variations and are "substantially similar" to claim 1 for purposes of the § 101 analysis.[1] *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (approving use of a representative claim where "all the claims are substantially similar and linked to the same abstract idea.") (internal quotation marks and citation omitted). Other asserted claims of the '140 and '609 patents add various limitations related to the "detecting" or "determining" steps and some provide examples of actions that can be taken in response, but they are all directed to the same abstract idea, as explained in more detail below. Claim 25 of the '609 patent, which is an apparatus (as opposed to a method) claim, is also directed to the same subject matter as claim 1 of the '140 patent. The analysis of the "underlying invention" does not change because the claim is to an apparatus instead of a method. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1374 (Fed. Cir. 2011).

---

[1] The remaining asserted claims are: 2-3, 5-9, and 15-18 of the '140 patent and 1-12, 15, 17-21, 23, and 25 of the '609 patent. (Compl. ¶¶ 90 & 124.)

4

Use of claim 1 of the '140 patent as a representative claim for both patents is particularly appropriate because the United States Patent and Trademark Office rejected the claims of the '609 patent as "not patentably distinct" from the claims of the '140 patent, and the patentee filed a terminal disclaimer in response. *See* Ex.1.[2]  This terminal disclaimer "is a strong clue that a patent examiner and, by concession, the applicant, thought the claims … lacked a patentable distinction over the parent." *PPS Data, LLC v. Jack Henry & Assocs., Inc.*, 404 F. Supp. 3d 1021, 1034 (E.D. Tex. 2019) (relying on terminal disclaimer for representative claim purposes in § 101 analysis) (quoting *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1168 (Fed. Cir. 2018)).

C.     **The Asserted Claims of the '609 and '140 Patents are Directed to the Abstract Idea of Detecting the Motion or State of a Vehicle and Taking an Action in Response.**

The claims describe "determining one or more operational states of the vehicle based on the one or more predetermined criteria"—such as detecting motion of a vehicle or detecting whether the vehicle is turned on.  '140 patent at claim 1.  But the claims fail to recite any specific technical solution for detecting the motion or state of a vehicle and performing an action in response.  Instead, the claims list basic computing functions—"monitoring," "detecting," "determining," "performing"—untethered to any specific way of achieving them.

Claim 1 of the '140 patent begins by "monitoring" an "operation indicator" on a "portable device" and "detecting" when that indicator meets some "predetermined criteria."  *Id.* at 10:65-11:4.  It then requires "determining one or more operational states of the vehicle" based on those criteria, followed by "determining" and "performing" "one or more actions" based on the "operational state."  *Id.* at 11:4-10.  The claim then lists possible "change[s] in the

---

[2] The Court may consider the prosecution history of the patents on a motion to dismiss.  *See, e.g.*, *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015).

operational state" that might be detected—*e.g.*, the vehicle starts moving or stops moving. And that is it. Nothing in the claim indicates how *any* of these steps are accomplished by the generic "portable device." And, as recited in the claims, the "portable device" is nothing more than a generic piece of computing equipment, used to carry out the "monitoring," "detecting," "determining," and "performing" steps. *See Affinity Labs of Tex., LLC v. DIRECTV, LLC,* 838 F.3d 1253, 1262 (Fed. Cir. 2016) ("*Affinity/DIRECTV*") (taking action "through the use of conventional devices, without offering any technological means of effecting that concept" indicates that the claims are directed to an abstract idea).[3]

Humans have long monitored the motion or state of vehicles (using sight or sound, or by using sensors like radar detectors, accelerometers, or GPS), and taken actions in response to these observations. *See CyberSource,* 654 F.3d at 1372 (if a concept "can be performed in the human mind, or by a human using a pen and paper," it is directed to an "unpatentable mental process"). But claim 1 suggests nothing more than using generic computing equipment in the form of a "portable device" to perform this routine, conventional activity. This is a "quintessential 'do it on a computer patent,'" accomplishing nothing more than the use of generic computers to accomplish abstract ideas. *Univ. of Fla. Rsch. Found. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019); *see also Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) ("[M]ere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology.");

---

[3] Implementing an abstract idea in a "particular … technological environment," such as by listing various vehicle operational states, and using conventional technology (*e.g*., conventional portable devices) does not make the claims "any less abstract." *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314, 1319 (Fed. Cir. 2016) (citations omitted); *see also, e.g., Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010) (an abstract idea cannot become patentable by limiting the claim to a "particular technological environment") (citation omitted).

*Affinity/DIRECTV*, 838 F.3d at 1262 (claims that recited delivery of content "through the use of conventional devices, without offering any technological means of effecting that concept" were directed to an abstract idea).

Notably, the Federal Circuit has repeatedly found similar claims to be directed to abstract ideas. *See, e.g.*, *Univ. of Fla. Rsch. Found.*, 916 F.3d at 1366-68 (claims for "receiving physiologic treatment data" from bedside machines, "converting" the data, "performing at least one programmatic action," and "presenting" the data were directed to the abstract idea of "collecting, analyzing, manipulating, and displaying data" and ineligible under § 101); *Elec. Power Grp.,* 830 F.3d at 1351 (claims to "performing real-time performance monitoring of an electric power grid" ineligible under § 101); *TDE Petroleum Data Sols., Inc., v. AKM Enter., Inc.*, 657 F. App'x 991, 992 (Fed. Cir. 2016) (claims to "processing sensor data on an oil well drill" ineligible under § 101). Indeed, the Federal Circuit recently found claims to motion sensor systems similar to what RideMetric claims to be directed to an abstract idea. *See* Ex. 3, *iLife Techs., Inc. v. Nintendo of Am., Inc.*, No. 20-1477 at 5 (Fed. Cir. Jan. 13, 2021) (holding that claims to a system for detecting movement of an object using acceleration data from a sensor were directed to the abstract idea of gathering, processing, and transmitting data).

### D. The Asserted Claims of the '609 and '140 Patents Lack an "Inventive Concept."

*Alice* step two requires determining whether the claim limitations add an "inventive concept" to "transform" the claimed abstract idea into patent-eligible subject matter. *Alice*, 573 U.S. at 217 (citation omitted). As a part of this inquiry, the Court "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* at 217 (quoting *Mayo*, 566 U.S. at 78-79). Generic computer technology, "well-understood,

routine, conventional," or "purely functional" elements cannot supply the required inventive

concept. *Id.* at 225-26 (citation omitted). Functional, result-focused claims, which "do no more

than describe a desired function or outcome, without providing any limiting detail that confines

the claim to a particular solution," are simply not patent-eligible. *Affinity Labs of Tex., LLC v.

Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016); *see also Elec. Power Grp.*, 830 F.3d at

1356 ("functional character of claim language has been a frequent feature of claims held

ineligible under § 101"); *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 533 (Fed.

Cir. 2020) (reciting features that amount to claiming a "black box" cannot render an abstract idea

eligible; rather the claim must "describe *how* to solve the problem in a manner that encompasses

more than the 'principle in the abstract.'") (citation omitted). Moreover, "[t]o claim a

technological solution to a technological problem, the patent must actually *claim the

technological solution*." *Id.* at 535.

### 1. The Claims Use Generic, Functional Language.

Claim 1 of the '140 patent discloses no "inventive concept" because it provides nothing

more than routine functional language (the "monitoring," "detecting," "determining," and

"performing" steps) and references only generic technology (a "portable device").

A generic "portable device" performs the first two claimed steps: "monitoring" and

"detecting." The claim imposes no technical requirements on how the device "monitors" or

"detects," so this functional language does not elevate the abstract idea into a patent eligible one.

*See Two-Way Media*, 874 F.3d at 1337 ("The claim requires the functional results of

'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not

sufficiently describe how to achieve these results in a non-abstract way.").

The first of the "determining" steps uses the detected information for "determining one or

more operational states of the vehicle based on the one or more predetermined criteria." '140

patent at claim 1. This functional language suggests no more than the "selection and manipulation of information," which does not transform an otherwise abstract idea into an inventive concept. *Elec. Power Grp.*, 830 F.3d at 1355; *Two-Way Media,* 874 F.3d at 1337. The other "determining" steps recite similar functional language for "determining the one or more actions based on the one or more operational states of the vehicle" and "determining the one or more actions based on at least one change in the operational state of the vehicle." '140 patent at claim 1.

The claim lists possible changes in "operational state," such as from moving to stationary or from stationary to moving. *Id.* But "enumerating types of information and information sources" is not an inventive concept. *Elec. Power Grp.*, 830 F.3d at 1355 ("[M]erely selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes."). These "determining" steps thus add nothing to the underlying abstract idea beyond the generic concept of selecting and analyzing discrete information. And notably, the claim provides no suggestion of *how* to determine which action to take based on any of these states. *See Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1328 (Fed. Cir. 2020) (ineligible claims "merely ma[d]e generic functional recitations that requests are made and then granted."); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (to be eligible, claims must have "the specificity required to transform [the] claim from one claiming only a result to one claiming a way of achieving it.").

Finally, the "performing" step recites only "performing the one or more actions on the portable device." '140 patent at claim 1. But there is no information in the claim about what the "action[]" might be. Performing some unspecified action on a generic computing device is not an inventive concept.

### 2. The Claims Reference Routine, Conventional Technology.

Aside from the recitation of functional language, claim 1 refers only to a single piece of technology: a "portable device." *Id.* The reference to a generic portable device amounts to nothing more than "reciting an abstract idea performed on a set of generic computer components." *Two-Way Media*, 874 F.3d at 1339. The specification states that the "portable device" may be a "cell-phone, pda, or smartphone," or the alleged invention may simply "run as a software on a *general purpose device*." '140 patent at 4:38-40 (emphasis added). While some claims suggest that the "portable device" can record a "position" or that it includes an "accelerometer" (*e.g.*, claims 3 and 18 of the '140 patent and claims 2, 8, and 23 of the '609 patent), the patents do not purport to have invented a "portable device" with these capabilities—GPS and sensors, like accelerometers, are build-in features of common portable devices like cell phones. Using these existing sensors in a conventional way does not constitute an inventive concept. *See* Ex. 3, *iLife Techs.* at 6-7 (affirming as ineligible under *Alice* step two claims to a system for detecting movement of an object using acceleration data that recited only generic computing and communication equipment).

The Complaint alleges that RideMetric "conceived a concrete invention that improves the functionality of smartphones by allowing them to identify vehicle operation related attributes through an unconventional leverage of the devices' internal accelerometers and other sensors," (Compl. ¶ 27), but that "unconventional leverage" is not described in the claims—claim 1 of the '140 patent and many others do not even require an accelerometer or a smartphone. As the Federal Circuit has made clear in the § 101 context, "[i]n ruling on a 12(b)(6) motion, a court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (internal quotation marks and citation omitted).

10

### 3. The Ordered Combination Provides No Inventive Concept.

The ordered combination of claim limitations here "ad[ds] nothing . . . that is not already present when the steps are considered separately." *Alice*, 573 U.S. at 225 (citation omitted). The ordering of the claimed steps ("monitoring," "detecting," "determining," and "performing") immediately follows from the abstract idea of detecting the motion or state of a vehicle and taking an action in response. Claim 1 does not recite the "non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Nor does it teach how known components "operate in an unconventional manner." *Amdocs (Israel) Ltd. v. Openet Telecom*, Inc., 841 F.3d 1288, 1300-01 (Fed. Cir. 2016).

### E. The Additional Asserted Claims of the '140 and '609 Patents Add No Technical Substance to Claim 1 of the '140 Patent.

None of the additional limitations found in the other asserted claims provide an inventive concept sufficient to confer patent eligibility upon the abstract idea of detecting the motion or state of a vehicle and taking an action in response. Certain claims list the use of "pattern recognition models" as "predetermined criteria" in the first "determining" step. '609 patent at claims 3-12; '140 patent at claim 18. And, similar claims list categories of information that the "operational state[] of the vehicle matches." '609 patent at claim 21. The specification describes pattern recognition as using "techniques" to identify changes in a vehicle's state, but the claims are not limited to any specific method of recognizing patterns in a vehicle's behavior.[4] '609 patent at 5:29-30. This "selection and manipulation of information" is not an inventive step. *See Elec. Power Grp.*, 830 F.3d at 1355.

---

[4] Certain claims list "*at least one* markov model," but are not limited to just that model nor do they claim how that model is achieved. '140 Patent at claim 18; '609 Patent at claims 10, 12.

Other claims further limit the functional "determining" steps to "determining a position of the portable device," or add a step of "determining that the individual is a driver" of the vehicle, or determining what type of vehicle the device is in.[5] These claims merely declare that the additional "determining" steps occur as a step in detecting the motion or state of a vehicle, without explaining how (or through what technology) they are accomplished. The claims list a possible set of measurements that might be relevant to this determination—"acceleration, forces, velocity, the at least one location point, and time"—but fail to describe what measurements to take and how to accomplish the "determining" steps in any particular way. *See, e.g.*, '609 patent at claim 5.

Certain asserted claims add limitations that require "recording at least one geographic position of the vehicle" when the vehicle is in "an engine is off state" and then "directing the individual upon his request using the portable device to the at least one geographic position." '140 patent at claims 2-3, 5 (limitations directed to "vehicle location," "geographic position," and "location of the individual" respectively); '140 patent at claims 6-9 (limitations directed to determining if the "individual is in an outside of the vehicle location"). This again does not impart patentability, as it is nothing more than "selecting information, by content or source, for collection, analysis, and display." *Elec. Power Grp*. 830 F.3d at 1355. Moreover, technology to identify a location and direct a user to that location—GPS—was conventional long before RideMetric's patents, as the specification concedes. '140 patent at 1:37-56. As such, these claims add nothing to the abstract idea other than to specify one "action" one might take after a

[5] Claims 17-19 of the '609 patent and 15-17 of the '140 patent include "determining a position of the portable device." Claims 5, 7, 9, and 18-20 of the '609 Patent and claims 16-17 of the '140 include limitations of determining whether the user is the driver. Claims 6-7 and 15 of the '609 patent include the "determining a type of the vehicle" limitation.

certain "change" in the state of a vehicle—if the vehicle stopped and turned off, record its parked location. Using "well-understood, routine, conventional" technology (GPS) for its intended purpose cannot supply the required inventive concept. *Alice*, 573 U.S. at 225-26 (citation omitted).

Claim 25 of the '609 patent, the sole asserted "apparatus" claim, similarly fails because it recites conventional components described in purely functional terms—a "sensor" is described as generating indicators, a "monitor" monitors those indicators, a "state detector" detects when the indicators meet criteria, an "action determiner" determines an action, and an "action performer" performs that action. *See* '609 patent at claim 25. As noted, the analysis of the "underlying invention" does not change because the claim is to an apparatus instead of a method. *CyberSource*, 654 F.3d at 1374.

### F. The Claims of the '174 Patent are Invalid under 35 U.S.C. § 101.

#### 1. Claim 5 of the '174 Patent is Invalid For the Same Reasons the '140 and '609 Patents Fail to Satisfy §101.

Claim 5 of the '174 patent is similar to claim 1 of the '140 patent described above. The claim recites a "method of performing one or more actions on a portable device" by "monitoring at least one operation indicator," "detecting" when the indicator meets certain criteria, and "determining entirely or in part" both "one or more vehicle independent states" and "one or more vehicle dependent states." '174 patent at claim 5. This is an even broader version of the method discussed for claim 1 of the '140 patent. *See supra* I.C. For the reasons discussed above, claim 5 of the '174 patent is invalid under 35 U.S.C. § 101. *See supra* I.C & I.D.

#### 2. Claims 1-4 of the '174 Patent are Directed to Patent Ineligible Laws of Nature and Lack Any Inventive Concept.

Claims 1-4 of the '174 patent recite only mathematical relationships based on laws of nature and are therefore ineligible under 35 U.S.C. § 101. *See Ass'n for Molecular Pathology v.*

*Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) ("Laws of nature" and "natural phenomena" are not patentable) (citation omitted); *Bilski*, 561 U.S. at 611-12 ("[a]llowing petitioners to patent [a concept and mathematical formula] would pre-empt use of this approach in all fields"); *Diamond v. Diehr*, 450 U.S. 175, 185-86 (1981) (like a law of nature, a "mathematical formula . . . cannot be the subject of a patent.").

Claim 1 recites a "method of detecting the condition of a vehicle turning," consisting of a single step: "estimating an angle of how closely a rotation vector is aligned with a gravity vector." '174 patent at claim 1. Dependent claim 2 adds only that one estimates the probability that the vehicle is turning "as a function of" that angle." *Id.* at claim 2. These claims do no more than restate basic principles of physics found in any introductory textbook. This is reinforced by the specification, which asserts that the inventors have purportedly "identified a unique condition" when a vehicle is turning: that "the vector of rotation will be roughly parallel to the vector of gravity." '174 patent at 1:52-56. Claims 1-2 simply re-state that natural phenomenon.

Despite purporting to make a unique discovery, the inventors are claiming basic physics and mathematics. Assume, for example, a vehicle is driving on the x-y plane of an x-y-z (three-dimensional) space. Basic physics directs that the gravity vector points downwards, in the negative z-direction. *See* Ex. 2, Daniel Kleppner & Robert J. Kolenkow, *An Introduction to Mechanics* (1973) at 233-34. If the vehicle is on level ground and turns left, the rotation (angular velocity) vector will point straight upwards in the positive z-direction. If the vehicle turns right, the rotation vector will point straight downwards in the negative z-direction. *See id.* In either instance, turning left or turning right, the rotation vector will be parallel to the gravity vector (or close to parallel, if the vehicle is on a slope instead of level ground). That relationship between these two vectors follows directly from basic principles of physics. In particular, the "right-

hand-rule" describes this phenomena. *See id.* at 234 (direction of the rotation vector is "dictated by the right hand rule").[6]

Claims 1 and 2 do nothing more than state this relationship backwards—if a vehicle's rotation vector is closely aligned with a gravity vector, it is turning. That is a statement about physics, not a patentable invention. Claims 1 and 2 add no further inventive concept nor improvements to confer patent eligibility—in fact, they recite no technology whatsoever.

Similarly, claims 3 and 4 restate principles of physics that follow from comparing the vectors that describe the motion of an object. Claim 3 recites a "method of detecting a direction of a speed change vector" that involves detecting a vehicle "turning," the "movement vector" of the turn, "estimating the angle between the" movement and speed vectors, and determining whether the "speed change vector" is either an acceleration or deceleration vector. '174 patent at claim 3. Claim 4 depends from claim 3 and adds only an estimation based on analyzing the function between the speed change and movement vector. *Id.* at claim 4.

Figure 2 confirms that the "movement vector" is the cross product of the rotation vector and centrifugal force vectors. '174 patent at Fig. 2. The claims then compare the angle of the movement vector to the speed change vector, and estimate (based on that angle) whether a turning vehicle is accelerating or decelerating. As with claims 1-2, these claimed vector comparisons merely restate basic physics principles.

This, again, is apparent from the following example. If a vehicle is turning left around a circle, the vehicle's rotation vector points in the positive z-direction and the centrifugal force vector points to the outside of the circle around which the vehicle is turning. Ex. 2, Kleppner at

---

[6] On a motion to dismiss, the Court may take judicial notice of facts that are not subject to reasonable dispute and are either generally known or readily determined through unimpeachable sources. *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012).

17-18, 234. As the specification confirms, the cross-product of these two vectors is the movement vector, in the direction the vehicle is moving; it will point tangentially along the circle in the same direction the vehicle is moving. '174 patent at 2:29-31; Ex. 2, Kleppner at 18, 25. This again is an instance of the "right-hand rule" which describes the direction of a vector computed as the cross-product of two other vectors. *Id.* at 234. If the vehicle is slowing down or speeding up, the acceleration vector will be parallel to the movement vector because the movement vector points in the direction the car is travelling. *Id.* When the car is speeding up, the acceleration vector points forward in the same direction of the movement vector (so the angle between the acceleration and movement vector is small). *Id.* When the car is slowing down, the acceleration vector points backwards and is in the opposite direction of the movement vector (so the angle between acceleration and movement vectors is large). *Id.*

Because claims 3 and 4 simply recite statements about these basic physics concepts used to describe the motion of objects, they too are not patentable inventions. As with claims 1 and 2, claims 3 and 4 disclose no technological solutions or inventive concept that could make them patentable.

## II.    RideMetric's Breach of Contract Claim Does Not State Sufficient Facts to Establish Breach of a Contract.

### A.    Legal Standards

Under Rule 12(b)(6), a plaintiff's obligation to provide "grounds" of its "entitle[ment] to relief" requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). To state a claim for breach of contract under Illinois law,[7] a plaintiff must plead (1) the existence of a valid and

---

[7] The MNDA's choice of law provision indicates that Illinois law controls. (Compl. Ex. D § 17.)

enforceable contract, (2) the plaintiff's own performance under the contract, (3) breach by the defendant, and (4) that the breach caused the plaintiff damages. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). And critically, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that [the defendant is] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Taha v. Int'l Brotherhood of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020).

### B. RideMetric's Breach of Contract Claim Fails to Plead Facts Sufficient to Render Its Claim Plausible.

The MNDA provides that confidential information "shall not be disclosed or used except as expressly permitted herein." (Compl. Ex. D at § 4.) The Complaint identifies only three alleged pieces of confidential information: a revised test plan provided by RideMetric to Allstate, a description of driving events, and information on RideMetric's SDK and RestFUL API. (Compl. ¶ 174.) The Complaint then alleges "[o]n information and belief" that Defendants breached the MNDA by "using" RideMetric's confidential information "in the development of at least the Drivewise application and to process the telematics data collected through [the application]." (*Id.* ¶ 175.) And finally, the Complaint jumps to the conclusion that "Allstate and Arity therefore breached the MNDA by using RideMetric's Confidential Information." (*Id.* ¶ 176.)

But RideMetric pleads no facts which, if accepted as true, render plausible that Defendants used RideMetric's confidential information. *See id.* The Complaint merely concludes that because RideMetric allegedly communicated confidential information to Defendants, the Defendants must have somehow used that information in breach of the MNDA. *Id.* RideMetric pleads no facts whatsoever from which the Court could draw the reasonable inference that such use took place. *Iqbal*, 556 U.S. at 678; *Stericycle, Inc. v. Carney*, No. 12 C

17

9130, 2013 WL 3671288, at *6 (N.D. Ill. July 12, 2013) (dismissing breach of contract claim because the complaint contained no facts supporting that the defendant disclosed confidential information after changing employers); *Inteum Co., LLC v. Nat'l Univ. of Singapore*, No. C17-1252-JCC, 2017 WL 6611961, at *3 (W.D. Wash. Dec. 27, 2017) (granting motion for judgment on the pleadings, because the complaint failed to allege facts to "support a plausible inference that [defendant] actually breached" the licensing agreement and NDA).  As such, Count IV should be dismissed under Fed. R. Civ. P. 12(b)(6).

### III.    RideMetric Fails to State a Claim Under the Illinois Trade Secret Act.

#### A.    Legal Standards

In order to state a claim for relief for trade secret misappropriation, a plaintiff must allege that information was (1) a trade secret; (2) misappropriated; and (3) used by the defendants. *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003).  To state a claim under the ITSA "[a] party seeking trade secret protection must do more than point to broad areas of [information] . . . and assert that something there must have been secret and misappropriated.  The plaintiff must show concrete secrets."  *Carpenter v. Aspen Search Advisers, LLC*, No. 10 C 6823, 2011 WL 1297733, at *3 (N.D. Ill. Apr. 5, 2011) (quoting *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992)).

ITSA complaints that fail to plead with sufficient specificity are routinely dismissed. *See, e.g.*, *Segerdahl Corp. v. Ferruzza,* No. 17 cv 3015, 2018 WL 828062, at *3 (N.D. Ill. Feb. 10, 2018) (dismissing trade secret claims for failure to plead with sufficient specificity and collecting motion to dismiss cases); *Thermal Zone Prods.Corp. v. Echo Eng'g, Ltd*., No. 93 C 0556, 1993 WL 358148, at *5-6 (N.D. Ill Sept. 14, 1993) (dismissing trade secret claim for failing to sufficiently identify a specific trade secret).  Sufficient pleadings need to specifically identify the purported secrets involved.  *See e.g., Mission Measurement Corp. v. Blackbaud, Inc.*,

216 F. Supp. 3d 915, 921 (N.D. Ill. 2016) (complaint included specific information such as "taxonomy sample[s], screen-shots of an outcomes prototype, and aspects . . . not described in the patent allegations."); *Covenant Aviation Sec., LLC v. Berry,* 15 F. Supp. 3d 813, 818 (N.D. Ill. 2014) (complaint pointed to "specific types of business information" such as "profit and loss information, internal costs and overhead, operational information").

### B.    RideMetric Fails to Plead the Existence of Trade Secrets.

RideMetric alleges that it owns trade secrets on "proprietary information" and "techniques" relating to the subject of the asserted patents.  (Compl. ¶¶ 182-83.)  The Complaint then states that Allstate used these "trade secrets" and that this use has "caused damage to RideMetric."  (*Id.* ¶¶ 187-90.)  That "formulaic recitation" of the elements of an ITSA claim is insufficient to state a claim.  *See Twombly*, 550 U.S. at 555.  Indeed, the Complaint does little more than parrot the words of the ITSA statute—both types of unspecified, alleged trade secrets ("information" and "techniques") are lifted directly from the statute.  765 Ill. Comp. Stat. Ann. 1065/2(d) (defining "[t]rade secret" as "information, including but not limited to . . . technique[s]").

The Complaint "point[s] to broad areas of [information]" and concludes that something there qualifies as a trade secret, without identifying any "concrete secrets."  *See Carpenter,* 2011 WL 1297733, at *3 (citation omitted).  For example, the Complaint suggests that RideMetric provided "detailed presentations that described RideMetric's patented and trade secret protected … solutions" (Compl. ¶ 55), but does not identify what information in those presentations was allegedly "trade secret protected"—and the Complaint entirely fails to distinguish any purported trade secrets from information contained in RideMetric's asserted patents, which have been public for many years.

Moreover, RideMetric's trade secret allegations are inconsistent with its obligations under the MNDA. Section 18 of the MNDA provides that the agreement shall remain in effect for two years after the December 4, 2015 effective date. (Compl. Ex. D at § 18.) Section 18 also requires the parties to identify trade secrets in order to extend the parties' obligations beyond the two year term "for so long as the information qualifies as a trade secret under applicable law." (*Id.*) RideMetric alleges that trade secrets were "disclosed by RideMetric under the MNDA," yet does not allege that it *identified* any information as a purported trade secret in its communications with Defendants. (Compl. ¶ 188.)

RideMetric has merely "made blanket generalizations regarding the information and documentation of their [alleged trade secrets]," "fail[ing] to specify with any exactitude which pieces of information actually constitute trade secrets." *Thermal Zone*, 1993 WL 358148, at *5. As such, the claim should be dismissed under Fed. R. Civ. P. 12(b)(6).

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that RideMetric's Complaint be dismissed.

Respectfully submitted,

Dated: January 14, 2021

*/s/ Thomas D. Rein*
Thomas D. Rein
IL Bar No. 6185199
Stephanie P. Koh
IL Bar No. 6279210
Nathaniel C. Love
IL Bar No. 6303857
Kevin R. Oliver
IL Bar No. 6324436
Christopher P. Shoup
IL Bar No. 6332208
**SIDLEY AUSTIN LLP**

20

One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7026
Facsimile: (312) 853-7036
Email: trein@sidley.com
Email: skoh@sidley.com
Email: nlove@sidley.com
Email: kevin.oliver@sidley.com
Email: cshoup@sidley.com

**ATTORNEYS FOR DEFENDANTS
ALLSTATE INSURANCE
COMPANY, ESURANCE
INSURANCE SERVICES, INC., AND
ARITY, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2021, the foregoing document was filed electronically through the Court's Electronic Case Filing System.  Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issued through the Court's Electronic Case Filing System on this date.

/s/ *Nathaniel C. Love*
Nathaniel C. Love