IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ATOS, LLC
d/b/a RIDEMETRIC,

        Plaintiff,

    vs.

ALLSTATE INSURANCE CO., ESURANCE
INSURANCE SERVICES, INC., AND ARITY,
LLC,

        Defendants.

CASE NO. 1:20-CV-6224
JUDGE ANDREA R. WOOD
MAGISTRATE BETH W. JANTZ

JURY DEMANDED

## RIDEMETRIC'S MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

Reginald J. Hill (6225173)
 rhill@jenner.com
Debbie L. Berman (6205154)
 dberman@jenner.com
Joel T. Pelz  (3127591)
 jpelz@jenner.com
Amit B. Patel (6309876)
 apatel@jenner.com
Michael T. Werner (6314250)
 mwerner@jenner.com
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654-3456
Telephone:  +1 312 222 9350
Facsimile:  +1 312 527 0484

*Counsel for Plaintiff*

# TABLE OF CONTENTS

Table Of Authorities ................................................................................................ ii

Introduction ............................................................................................................. 1

Background .............................................................................................................. 2

Argument ................................................................................................................. 4

I.      The Asserted Claims Of The '140 And '609 Patents Are Patent-Eligible. ...................... 4

      A.      Defendants fail to establish that claim 1 of the '140 patent is directed to an abstract idea and nothing more. .................................................................. 4

    1.      Claim 1 of the '140 patent is not directed to an abstract idea. ...................... 4

    2.      Even if claim 1 of the '140 patent were directed to an abstract idea, it is patentable because it is a concrete application of that idea. ......................... 8

    3.      This Court should defer any ruling on patent eligibility until after claim construction. ............................................................................................ 10

      B.      Claim 1 of the '140 patent is not representative of the asserted claims of the '140 and '609 patents. .................................................................... 11

II.     The Asserted Claims Of The '174 Patent Are Patent-Eligible. .......................... 13

      A.      Claim 5 of the '174 patent materially distinct from claim 1 of the '140 patent. ..................................................................................................... 13

      B.      Claims 1–4 of the '174 patent are not directed to laws of nature. ......................... 14

III.    RideMetric Has Stated A Breach Of Contract Claim. ....................................... 16

IV.    RideMetric Has Stated A Trade Secret Misappropriation Claim. ..................... 17

Conclusion ............................................................................................................. 20

# TABLE OF AUTHORITIES

**CASES**

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016) .................................................................................. 6

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ................................................................................... 4, 6, 8

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2015) .................................................................................. 9

*Berkeley*IEOR v. Teradata Operations, Inc.*,
    448 F. Supp. 3d 864 (N.D. Ill. 2020) ...................................................................... 10

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) ............................................................................ 9, 11

*CardioNet, LLC v. InfoBionic, Inc.*,
    955 F.3d 1358 (Fed. Cir. 2020) ............................................................................ 7, 14

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) .......................................................................... 12, 13

*Covenant Aviation Security, LLC v. Berry*,
    15 F. Supp. 3d 813 (N.D. Ill. 2014) ........................................................................ 18

*Diamond v. Diehr*,
    450 U.S. 175 (1980) ........................................................................................... 14, 15

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
    815 F. App'x 529 (Fed. Cir. 2020) ........................................................................... 9

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) .................................................................................. 6

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) .................................................................................. 5

*GoHealth, LLC v. Simpson*,
    No. 13-cv-2334, 2013 WL 6183024 (N.D. Ill. Nov. 26, 2013) ............................. 19

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
    No. 2020-1477, 2021 WL 117027 (Fed. Cir. Jan. 13, 2021) .................................. 6

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) .................................................................................. 6

*Inteum Co., LLC v. Nat'l Univ. of Singapore*,
    No. 17-cv-1252, 2017 WL 661196 (W.D. Wash. Dec. 27, 2017) ......................... 17

*Invado Pharm., Inc. v. Forward Sci. Distribution LLC*,
    No. 18-cv-2515, 2018 WL 5013556 (N.D. Ill. Oct. 16, 2018) ....................... 18, 19

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
    942 F.3d 1143 (Fed. Cir. 2019) .................................................................................. 7

*Liion, LLC v. Vertiv Grp. Corp.*,
   No. 18-cv-6133, 2019 WL 1281977 (N.D. Ill. Mar. 20, 2019) ............................ 17

*Mighty Deer Lick, Inc. v. Morton Salt, Inc.*,
   No. 17-cv-5875, 2020 WL 635904 (N.D. Ill. Feb. 11, 2020) ............................ 18

*Mission Measurement Corp. v. Blackbaud, Inc.*,
   216 F. Supp. 3d 915 (N.D. Ill. 2016) ................................................ 17, 19

*MyMail, Ltd. v. ooVoo, LLC*,
   934 F.3d 1373 (Fed. Cir. 2019) .............................................. 10, 14, 16

*PPS Data, LLC v. Jack Henry & Associates, Inc.*,
   404 F. Supp. 1021 (E.D. Tex. 2019) ....................................................... 11

*Pragmatus Telecom, LLC v. Genesys Telecommunications Laboratories, Inc.*,
   114 F. Supp. 3d 192 (D. Del. 2015) ....................................................... 13

*SimpleAir, Inc. v. Google LLC*,
   884 F.3d 1160 (Fed. Cir. 2018) ............................................................ 12

*Stericycle, Inc. v. Carney*,
   No. 12-cv-9130, 2013 WL 3671288 (N.D. Ill. Jul. 12, 2013) ............................ 17

*TDE Petroleum Data Sols., Inc., v. AKM Enter., Inc.*,
   657 F. App'x 991 (Fed. Cir. 2016) ......................................................... 6

*TecSec, Inc. v. Adobe Inc.*,
   978 F.3d 1278 (Fed. Cir. 2020) ............................................................ 6

*Thales Visionix v. United States*,
   850 F.3d 1343 (Fed. Cir. 2017) ...................................................... 14, 15

*Trustees of Purdue Univ. v. Omron Corp.*,
   No. 20-cv-5443, 2020 WL 7123099 (N.D. Ill. Dec. 4, 2020) ............................ 15

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
   957 F.3d 1303 (Fed. Cir. 2020) ............................................................ 4

*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*,
   916 F.3d 1363 (Fed. Cir. 2019) ............................................................ 6

*Visual Memory LLC v. NVIDIA Corp.*,
   867 F.3d 1253 (Fed. Cir. 2017) ........................................................... 10

**STATUTES**
35 U.S.C. § 101 ................................................................................. 4, 7

**RULES**
Local Patent Rule 1.1 ........................................................................... 10

## INTRODUCTION

Defendants' motion to dismiss RideMetric's patent claims should be denied because it is premised on incorrect claim constructions and fails to consider the specific, unconventional claimed arrangements that improve prior arrangements. As to the trade secret and contract claims, the very cases cited by Defendants confirm that RideMetric has adequately pled them.

First, the '140 and '609 patents are not directed to abstract ideas or mere principles of physics. Instead, a review of the patents shows that they are directed to concrete innovations for using portable devices (*e.g.*, smartphones) in connection with vehicles to accomplish precisely what humans cannot and do not do on their own: utilize the devices' on-board components to determine the vehicle operational states expressly enumerated in the claim language and then automatically take an action based on that determination. Indeed, the asserted claims are directed to a specific improvement in detecting vehicle operational states that overcomes the conventional solutions of either connecting a dongle directly to the vehicle or merely relying on GPS. Likewise, Defendants' contention that the '174 patent merely restates basic principles of physics is inaccurate. Though the claims do indeed relate to and depend on laws of physics (as many patents do), they are directed to concrete, specific applications of those laws to the particular real-world context of vehicles. Lastly, regardless of the merits of Defendants' patent-eligibility arguments, the arguments should not be resolved now because the relevant claim language includes numerous not-yet-construed terms that would directly impact any patent-eligibility analysis.

Second, Defendants ignore the more-than-sufficiently detailed allegations set forth in support of RideMetric's contract and trade secret claims. RideMetric has alleged that (1) it disclosed its confidential and proprietary information to Allstate and Arity pursuant to a non-disclosure agreement, (2) after RideMetric made the last of its disclosures, Allstate and Arity ceased communications with RideMetric, and (3) right around the time Allstate and Arity went

silent, Allstate's Drivewise application began to operate in a manner similar to RideMetric's proprietary technology. RideMetric thus plausibly alleges a breach of contract, and as Defendants' cited authority makes clear, RideMetric has alleged its trade secrets with sufficient specificity.

## BACKGROUND

**RIDEMETRIC OVERCOMES DRAWBACKS OF PREVIOUS TECHNOLOGY.**

Sensors on smartphones can serve many valuable purposes related to detecting if and how a person is driving. For example, if a driver's smartphone detects that a car is in motion, it can disable the smartphone's texting capabilities; if it detects that the car is parked, it can store the car's location. Compl. ¶¶ 14–15. Automobile insurers can use this information to determine whether the driver is driving safely and to allow the insurers to offer customized rates. *Id.* ¶ 13.

Before 2008, the technology to perform such functions was limited. Some technology relied on smartphone GPS capabilities, which drained batteries too quickly. *Id.* ¶ 19. Other technology relied on standalone dongles connected to vehicles' internal computer systems through On-Board Diagnostic System ("OBDS") ports. But the OBDSs in many vehicles did not work while in motion, and costly dongles did not work across different makes and models. *Id.* ¶ 18.

Around 2008, Zarick and Roy Schwartz (the "Inventors") invented a solution to these problems, realizing that a smartphone could leverage its internal accelerometer and other internal sensors—instead of the battery-hungry GPS—to detect what a vehicle is doing. *Id.* ¶ 21. Zarick further discovered how to use vibration data to distinguish between vibrations attributable to vehicle movement, such as engine or road vibrations, and vibrations attributable to other sources, such as from walking. *Id.* ¶ 25.

The Inventors sought and received three patents to protect their technology: Nos. 8,527,140 ("the '140 patent"), 9,152,609 ("the '609 patent"), and 9,846,174 ("the '174 patent"). *Id.* ¶¶ 30–32. RideMetric also developed proprietary technology that it kept secret. *Id.* ¶ 34. This

2

technology relates to generating accurate and reliable information using a smartphone's internal sensors and integrating that information into smartphone applications. *Id.* ¶¶ 35–37.

By 2012, the Inventors began creating a software development kit ("SDK") and a mobile app to showcase their invention. *Id.* ¶ 28. Their app was available on the Google Play Store by invitation around 2014 and publicly around March of 2015. *Id.*

**RIDEMETRIC SHARED ITS TRADE SECRETS WITH ALLSTATE AND ARITY UNDER A MUTUAL NON-DISCLOSURE AGREEMENT, BUT THEY THEN IMPROPERLY USED THOSE TRADE SECRETS IN THEIR OWN APPS.**

Defendants are Allstate Insurance Company ("Allstate"), and two of its subsidiaries, Esurance Insurance Services, Inc. ("Esurance") and Arity, LLC ("Arity"). In 2010, Allstate launched its "Drivewise" program, which tailored insurance rates to driving behavior. *Id.* ¶¶ 38–40. Initially, Drivewise required drivers to connect a dongle to their vehicle's OBDS. *Id.* ¶ 41. That solution suffered from the drawbacks described above. *Id.* ¶ 18.

At a conference in September 2012, Zarick discussed the invention with an Allstate official, who believed it was impractical and impossible. *Id.* ¶¶ 44–45. But these high-level discussions still continued for years. *Id.* ¶¶ 45–48. Then, on December 16, 2015, to facilitate more detailed discussions and so they could further evaluate RideMetric's proprietary technology, Allstate and Arity executed a non-disclosure agreement with RideMetric (the "MNDA"). *Id.* ¶ 51. The MNDA unequivocally prohibits Defendants' use of confidential information received from RideMetric, other than in connection with negotiating a potential business arrangement. *Id.* ¶¶ 53–54.

With the protection of the MNDA, RideMetric shared its trade secrets, including how the technology could be incorporated into Allstate's software and specifics of RideMetric's SDK. *Id.* ¶¶ 55–61. Allstate and Arity later abruptly cut off contact, falsely claiming that they were pausing evaluation efforts to focus on other priorities. *Id.* ¶ 62. But then, Allstate's Drivewise app seemed to incorporate RideMetric's trade secrets shared under the MNDA. *Id.* ¶¶ 63–74. Indeed, the

Drivewise app, as well as Esurance's DriveSense app, both of which incorporate Arity's software, use smartphone internal accelerometers to detect what the user's vehicle is doing—the foundation of the trade secrets that RideMetric shared with Allstate and Arity under the MNDA, and what Allstate originally dismissed as being impossible and impractical.  *Id.* ¶¶ 45–48, 63–86

## ARGUMENT

### I.  THE ASSERTED CLAIMS OF THE '140 AND '609 PATENTS ARE PATENT-ELIGIBLE.

RideMetric alleges infringement of claims 1–12, 15, 17–21, 23, and 25 of the '609 patent and claims 1–3, 5–9, and 15–18 of the '140 patent.  Defendants argue that claim 1 of the '140 patent is a patent-ineligible abstract idea under 35 U.S.C. § 101 and that it is representative of the other 31 asserted claims.  Defendants are incorrect on both counts.  Claim 1 is directed to a concrete invention, not an abstract idea.  Moreover, Defendants' abbreviated analysis of that claim does not establish that the remaining 31 asserted claims rise and fall with it.

### A.  Defendants fail to establish that claim 1 of the '140 patent is directed to an abstract idea and nothing more.

Under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014), Defendants must make two showings to establish that claim 1 of the '140 patent is invalid under § 101: that the claim (1) is directed to an abstract idea and (2) contains no elements transforming it into a concrete application of that idea.  *Id.* at 217.  Defendants' motion does neither.

### 1.  Claim 1 of the '140 patent is not directed to an abstract idea.

"In cases involving software innovations, [the first *Alice*] inquiry often turns on whether the claims focus on specific asserted improvements in computer capabilities [or functionality] or instead on a process or system that qualifies [as] an abstract idea for which computers are invoked merely as a tool." *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020). The patent's specification is relevant to the first inquiry as well.  *See id.* at 1305.

4

      a.     Defendants rely on an incorrect view of claim 1; as the specification makes clear, claim 1 embodies an improvement to prior technology.

Defendants insist that claim 1 is directed to the "abstract idea of detecting the motion or state of a vehicle and taking an action in response." Mot. at 5. Defendants improperly describe claim 1 at an overly "high level of abstraction and untethered from the language of the claim[]"— a practice the Federal Circuit has cautioned against. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016). The claim language and specification show that claim 1 is directed to one particular way a portable device can detect a vehicle's state and take action in response, different from the conventional ways devices had previously performed that function.

As explained in the specification and complaint, it is useful for a mobile device (such as a smartphone) to automatically identify what a vehicle is doing. For instance, if the smartphone detects that the vehicle is moving, it can disable texting; if it detects that a trip has ended, it can automatically store the location where the car was parked. Compl. ¶¶ 14–15; '140 pat. 1:27–29. Conventional attempts to meet those needs fell short. One conventional solution relied on a costly dongle attached to a car's OBDS, but differences between cars' OBDSs limited dongle compatibility. Compl. ¶ 18; '140 pat. 1:32–36. Another used smartphone GPS functionality, but that was battery-intensive, inaccurate and often impossible. Compl. ¶ 19; '140 pat. 1:37–42.

The Inventors' insight is that the smartphone's other built-in components could detect such changes through "operation indicators" without relying on the car's OBDS or smartphone GPS. Compl. ¶ 24. Further, analysis of movement sensed by those components could distinguish between movement related to the vehicle and movement outside the vehicle. *Id.* ¶ 25.

Claim 1 of the '140 patent captures that insight. It is directed to an "on-board component" of a "portable device carried by an individual" that monitors "at least one operation indicator," and determines actions based on "one or more operational states of the vehicle" and on "at least one

5

change in the operational state of the vehicle." '140 pat. 10:64–11:21. Claim 1 thus is not "an abstract idea" for which mobile devices and cars are "invoked merely as a tool." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020) (quotation marks omitted). Rather, the problem described in the complaint and specification is intensely concrete—unconventionally integrating mobile devices with cars without being tethered to a particular car or expending too much battery power. Mobile devices and cars are not invoked as a tool for patenting some abstract intellectual formula: the patent is *about a specific technological improvement to mobile devices and cars*.

The cases Defendants cite, on the other hand, all involved patent specifications and claims that were entirely devoid of the kinds of details present in the '609 patent. *See Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258–62 (Fed. Cir. 2016) (neither claim nor specification were "directed to the solution of a 'technological problem'") (quoting *Alice*, 573 U.S. at 223); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016) (ineligible claim did not "solve a challenge particular to the Internet") (citation omitted); *Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1368 (Fed. Cir. 2019) (throughout patent and claims, essential component "are described in purely *functional* terms"); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) ("Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information."); *TDE Petroleum Data Sols., Inc., v. AKM Enter., Inc.*, 657 F. App'x 991, 993 (Fed. Cir. 2016) (claim "simply recites generic computer functions that amount to nothing more than the goal of determining the state of an oil well operation"); *iLife Techs., Inc. v. Nintendo of Am., Inc.*, No. 2020-1477, 2021 WL 117027, at *3 (Fed. Cir. Jan. 13, 2021) (claim read in light of

specification "is not focused on a specific means or method to improve motion sensor systems, nor is it directed to a specific physical configuration of sensors").

b.       Numerous courts have upheld similar claims.

Multiple Federal Circuit cases have upheld the validity of similar claims under § 101. For example, in *CardioNet, LLC v. InfoBionic, Inc.*, the Federal Circuit upheld the validity of claims directed to a "device" comprising "beat detectors" to "identify" characteristics of cardiac activity, "logic" to "determine a variability" and "identify a relevance of the variability," and an "event generator to generate an event" based on the output of the logic and the beat detector. 955 F.3d 1358, 1365 (Fed. Cir. 2020). The defendants there argued that the invention was patent-ineligible "because it amounts to nothing more than using a computer to analyze heart function data in the same way that had long been done by physicians without a computer." *Id.* at 135. Rejecting that contention, the court held that "the claims focus on a specific means or method that improves cardiac monitoring technology; they are not directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Id.* at 1369 (quotation marks omitted).

Likewise, in *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, the Federal Circuit reversed the district court and upheld claims directed to "a device for producing error checking" that included "a generating device configured to generate check data" and "a varying device configured to vary original data" that "includes a permutating device configured to perform a permutation." 942 F.3d 1143, 1147–48 (Fed. Cir. 2019). The district court had invalidated the claims because they "do 'not say how the data is reordered, how to use reordered data, how to generate additional data, how to use additional data, or even that any data is transmitted.'" *Id.* at 1148. But the Federal Circuit reversed, holding that the claims were "directed to a non-abstract improvement in an existing technological process (i.e., error checking in data transmissions)." *Id.*

Here, Defendants simply repeat the arguments that the Federal Circuit in *CardioNet* and *Koninklijke* thoroughly rejected. Defendants insist that this is a "quintessential 'do it on a computer patent'" that replicates activity in a "human mind" but "fail[s] to recite any specific technical solution for detecting the motion or state of a vehicle and performing an action in response." Mot. at 5–6. But Defendants' argument fails because claim 1 recites a technological innovation that improves the operation of smartphones in vehicles. Indeed, Defendants' insistence that the claim merely replicates human mental activity, *id.* at 6, gets the claim exactly backwards.

The claimed method accomplishes a task that humans, by definition, *cannot* and *do not* do: monitor an "operation indicator *continuously and transparently to the individual*," using an "on-board component of the portable device," and take actions in response. '140 pat. 10:66–11:12. A human may be able to sense that a vehicle is accelerating, braking, or cornering, but certainly not in the same way that accelerometers or other on-board components have. That is what allows, for example, disabling texting or storing parking spots, precisely so humans *do not* have to do those things manually. The claim is not merely directed to the abstract mental steps a human might take, but instead is directed to a technological improvement that avoids such mental steps.

2. <u>Even if claim 1 of the '140 patent were directed to an abstract idea, it is patentable because it is a concrete application of that idea.</u>

Even if the claim were directed to the abstract idea of "detecting the motion or state of a vehicle and taking an action in response," Mot. at 5, the claim contains limitations that narrow it significantly from that idea. At *Alice* Step 2, the court decides whether the claim contains an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself," or whether instead the non-abstract activities are "well-understood, routine, conventional activities." 573 U.S. at 218 (quotation marks omitted). The court cannot merely analyze each

claim limitation in isolation; even if "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself," an inventive concept can be found in an "ordered combination"—that is, "the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349–50 (Fed. Cir. 2015).

Defendants focus primarily on the limitations in isolation, Mot. at 8–10; when they turn to the "ordered combination" question, they jump to the conclusion that the steps "immediately follow from the abstract idea of detecting the motion or state of a vehicle and taking an action in response." *Id.* at 11. Several limitations narrow the claim from the general idea of detecting a vehicle's state and taking an action in response: (1) an "operation indictor" that "is created by an on-board component of the portable device" when "located inside a vehicle," (2) "monitoring" that indicator "continuously and transparently to the individual," (3) the use of "predetermined criteria" to determine "operational states," and (4) determining actions based on the "operational states" and a "change in the operational state." Those narrowing limitations distinguish the claim from the purportedly abstract idea. The ordered combination of using an "operation indicator" created by an "on-board component" "continuously and transparently" in conjunction with the remaining claim elements is what provides the inventive concept and improvement over the conventional solutions, namely, a directly connected dongle- or a GPS-based solution. *Cf. Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 533 (Fed. Cir. 2020) (claim "recites conventional elements in a purely functional manner, without implementation detail even in the specification").

Defendants cannot show *at the pleadings stage*, without any discovery, that this combination of elements is routine or conventional. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("The question of whether a claim element or combination of elements is

well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence."); *Berkeley*IEOR v. Teradata Operations, Inc.*, 448 F. Supp. 3d 864, 873 (N.D. Ill. 2020) (denying motion to dismiss based on plaintiff "sufficiently alleg[ing] the shortcomings of the prior art and how the invention overcomes these shortcomings"). Because at the pleadings stage, "all factual inferences drawn from the specification must be weighed in favor of . . . the non-moving party," the Court cannot conclude that the claim elements are not unconventional. *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1262 (Fed. Cir. 2017); *see also, e.g.*, Compl. ¶¶ 15–18; '140 pat. 1:27–42.

      3.    <ins>This Court should defer any ruling on patent eligibility until after claim construction.</ins>

At a minimum, the Court should defer a decision on patent eligibility until claim construction rather than deciding the issue on the pleadings, given that claim construction can be relevant. *See MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1380–81 (Fed. Cir. 2019) (reversing dismissal under section 101 because district court did not construe claim limitation); *see also*, LPR 1.1 ("If a party files, prior to the Claim Construction Proceedings provided for in LPR Section 5, a motion that raises claim construction issues, the Court may defer the motion until after the Claim Construction Proceedings."). Here, at least two claim terms may be relevant to the *Alice* analysis: "operation indicator" and "predetermined criteria." The specification's defining language relevant to "operation indicator" makes clear that the claim does not preempt all applications of an abstract idea. '140 pat. 3:64–66 (certain "data receiving units" "do not generate operation indicators"). The specification also describes "predetermined criteria" as "a set of rules to help determine the operational state of the vehicle," clearly indicating the term is specific to vehicle technology. *Id.*

4:10–15.  When the terms are construed appropriately, the claim is meaningfully different from an abstract idea.  In the current posture of this case, dismissal is improper.

### B. Claim 1 of the '140 patent is not representative of the asserted claims of the '140 and '609 patents.

Even if the Court were to hold that claim 1 of the '140 patent is invalid, it should still deny the motion to dismiss as to the other 31 asserted claims of the '140 and '609 patents for several reasons.  First, it is common for dependent claims to be patent-eligible, even when independent claims in the same patent are ineligible.  *See, e.g.*, *Berkheimer*, 881 F.3d at 1365, 1370 (independent claim patent-ineligible but unrepresentative of dependent claims, and that patent-eligibility of dependent claims could not be decided without discovery).  Therefore, Defendants must establish patent-ineligibility for each of the other asserted claims.

Second, "[t]he initial burden of persuasion rests on the defendant to identify a rationale for treating a given claim or claims as representative of other asserted claims."  *PPS Data, LLC v. Jack Henry & Associates, Inc.*, 404 F. Supp. 1021, 1030 (E.D. Tex. 2019).  "[T]o meet its burden, the defendant must conduct an analysis tethered to the claim language, to show that there are no legally relevant distinctions between the claim identified as representative and the remaining asserted claims."  *Id.* at 1031.  Defendants here have not met that burden.  Defendants compress their analysis for all the 31 different patent claims into just a few pages, insisting that the narrowing limitations of all those claims are either "conventional" or "functional" and hence that they are not materially different from claim 1 of the '140 patent.  Mot. at 11–13.

That simply is not the case.  For example, the dependent claims of the '140 patent, and all the claims of the '609 patent,[1] contain substantially narrowing limitations that refer to non-abstract,

---

[1] Defendants point to the '609 patent's terminal disclaimer relative to the '140 patent as a basis for inferring the '609 patent's invalidity.  Mot. at 5.  Of course, if the Court finds *any* claims of the '140 patent as not invalid, the terminal disclaimer would support RideMetric, not Defendants,

real-world activities. For example, claim 3 of the '140 patent includes limitations related to the vehicle's geographic position, while claim 5 includes limitations related to an individual's location. Other dependent claims are narrower still: claim 9 of the '140 patent includes the limitations of "recording a first geographic positions of the vehicle when the one or more operational states of the vehicle have changed to a vehicle movement is lingering state; recording at least one subsequent position of the portable device at predetermined sampling periods until the location of the individual is changed to the individual is in an outside of the vehicle location; directing the individual upon his request using the portable device through the at least one subsequent geographic position to the first geographic position." The additional limitations are not mathematical algorithms or abstract ideas; they make the claims go substantially beyond "detecting the motion or state of a vehicle and taking an action in response." *See* Mot. at 11.

Moreover, claim 18 of the '140 patent is entirely different from claim 1: it requires using an "accelerometer" and "detecting when the acceleration sequences meet a predetermined pattern recognition criteria" which "include at least one markov model." Narrowing limitations also appear in several claims of the '609 patent. *E.g.*, claim 3 (requiring "pattern recognition models"); claim 8 (requiring "accelerometer"); claims 10, 12 (requiring "markov model"). Claim 1 of the '140 patent is not "representative" of these very different claims, and as such, Defendants' conclusory assertions do not provide support for invalidating the claims at the pleadings stage.

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014) does not support Defendants' effort to invalidate so many claims in one fell

---

because the claims of the '609 patent might be patentably indistinct from the *valid* claims of the '140 patent. Even if the Court finds all claims of the '140 patent invalid, the terminal disclaimer would be, at best, inconclusive evidence as to the '609 patent. *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1167 (Fed. Cir. 2018) ("[O]ur cases foreclose the inference that filing a terminal disclaimer functions as an admission regarding the patentability of the resulting claims.").

swoop. There, the plaintiff did not challenge the defendant's characterization of certain patent claims as representative of every asserted claim and did not "identify any other claims as purportedly containing an inventive concept." *Id.* at 1346–48. Indeed, the plaintiff there conceded that some of the additional limitations in the other claims were not inventive concepts, and directed its arguments only to the purportedly representative claims. *Id.* at 1346, 1349. Here, by contrast, RideMetric has identified many claims that are distinct from the purportedly representative claims.

To be clear, RideMetric opposes dismissal of *all* asserted claims, but it is Defendants' burden to provide an individualized analysis of all asserted claims to support invalidation at the pleadings stage. *See Pragmatus Telecom, LLC v. Genesys Telecommunications Laboratories, Inc.*, 114 F. Supp. 3d 192, 199–201 (D. Del. 2015) (finding that conclusory assertion that additional claims did not include "'any meaningful limitation' that establishes patent eligibility" did not meet defendant's burden to show representativeness). Thus, Defendants have not established that the 31 additional asserted claims rise and fall with claim 1 of the '140 patent.

## II. THE ASSERTED CLAIMS OF THE '174 PATENT ARE PATENT-ELIGIBLE.

Count III of the complaint alleges infringement of claims 1–5 of the '174 patent. Contrary to Defendants' contention, all five claims are patent-eligible. Claim 5 is materially distinct from claim 1 of the '140 patent, and claims 1–4 are not merely directed to laws of nature.

### A. Claim 5 of the '174 patent materially distinct from claim 1 of the '140 patent.

Defendants assert that claim 5 of the '174 is "similar to claim 1 of the '140 patent." Mot. at 13. But claim 5 of the '174 patent is meaningfully different and should be upheld regardless of this Court's conclusion as to claim 1 of the '140 patent. Claim 5 includes the additional steps of determining "one or more vehicle independent states" and "one or more vehicle dependent states" based on "predetermined criteria" in view of "at least one operation indicator." '174 pat. 5:21–24. The specification details the distinction between "vehicle independent states" and "vehicle

dependent states." *E.g.*, *id.* 4:11–15 ("In some embodiments, the instant invention enhances determination and classification of driving behavior, in particular distinguishing between the dependent and independent operational states described in the STATE disclosure."). Defendants do not explain why these claim terms represent abstract ideas at *Alice* Step 1, or routine steps at Step 2, and thus have not met their burden. And again, this Court has not construed any claim terms, so dismissal now would be premature. *See MyMail*, 934 F.3d at 1380–81.

**B.** **Claims 1–4 of the '174 patent are not directed to laws of nature.**

Defendants err in arguing, based on passages from a textbook,[2] that claims 1–4 of the '174 patent are directed to laws of nature. To the contrary, they are directed to concrete engineering applications and thus are patentable.

It is well-settled that *applications* of laws of nature are patentable. For instance, in *Diamond v. Diehr*, the Supreme Court upheld the patent-eligibility of a method for curing rubber that used a mathematical equation—the Arrhenius equation—to calculate the optimal cure time. 450 U.S. 175, 177 & n.2 (1980). Although the Arrhenius equation itself was not patent-eligible, the method claim was "an application of a law of nature or mathematical formula to a known structure or process [that] may well be deserving of patent protection." *Id.* at 187. Hence, "when a claim containing a mathematical formula implements or applies that formula in a structure or process which, when considered as a whole, is performing a function which the patent laws were designed to protect . . . then the claim satisfies the requirements of § 101." *Id.* at 192. *Thales Visionix v. United States*, 850 F.3d 1343 (Fed. Cir. 2017) confirmed *Diehr*'s vitality post-*Alice*.

---

[2] Defendants' argument that the claims recite nothing more than passages from a textbook is a premature obviousness argument disguised as a patentability argument. *CardioNet*, 955 F.3d at 1372 ("[T]he novelty or nonobviousness of the invention has little to no bearing on the question of what the claims are 'directed to.'"). The court should not resolve such disputes at the motion to dismiss stage without a developed record or expert testimony.

The claim in *Thales* required sensors that "utilize[d] mathematical equations to determine the orientation of [an] object relative to the moving reference frame." *Id.* at 1348. The claim was patentable as "the application of physics [to] create an improved technique for measuring movement of an object on a moving platform." *Id.* at 1349; *see also Trustees of Purdue Univ. v. Omron Corp.*, No. 20-cv-5443, 2020 WL 7123099, at *4 (N.D. Ill. Dec. 4, 2020) (holding patent-eligible claims that "describe[] a mathematical improvement to the functionality of a blood pressure monitor or a blood pressure measurement method").

Under *Diehr* and *Thales*, the asserted '174 claims are patentable. Claim 1 recites a "method of detecting the condition of a vehicle turning, comprising estimating an angle of how closely a rotation vector is aligned with a gravity vector." '174 pat. 4:58–60. Claim 2 includes the additional step of "estimating the probability of the vehicle turning as a function of the angle between the rotation vector and the gravity vector." *Id.* 4:61–63. These claims do not seek to patent laws of nature; they apply those laws in the particular context of detecting whether a vehicle is turning, including consideration of the road and environment. The specification explains as much: "In order to detect when a vehicle turns (*i.e.*, cornering) we have identified a *unique condition that is associated with turning in a vehicle*." *Id.* 1:52–54 (emphasis added). The claims cover detecting vehicle turns *using* physics and environmental conditions, not simply *laws* of physics.

Claims 3 and 4 are similarly patentable. The first and second steps in claim 3 are "detecting a condition of a vehicle turning" and "detecting a movement vector during the turn." *Id.* 1:66–67. Steps 3 and 4 require "estimating the angle between movement vector and speed change vector" in order to determine whether the "speed change vector" is an "acceleration vector" or a "deceleration vector." *Id.* 5:1–7. Claim 4 incorporates these limitations and further requires "estimating the probability of the speed change vector to be an acceleration or deceleration vector."

15

*Id.* 5:8–12. Thus, the claims teach determining whether a vehicle is accelerating or decelerating during a vehicle turn using physics; they do not preempt any laws of physics. Notably, Defendants rely on the same laws of physics in their own patents. *See* Ex. A, U.S. Patent No. 9,888,392, 15:51–54 (making a "determin[ation], based on the axis of gravity of the apparatus and the rotation vector of the apparatus"). Moreover, as above, without any claim constructions, dismissal now would be premature. *See MyMail*, 934 F.3d at 1380–81.

## III. RIDEMETRIC HAS STATED A BREACH OF CONTRACT CLAIM.

Allstate and Arity entered into an agreement with RideMetric providing that confidential information "shall not be disclosed or used except as expressly permitted [t]herein." Compl. Ex. D § 4. The complaint identifies confidential information that RideMetric provided to Allstate and Arity and alleges that they "used [that information] in the development of at least the Drivewise application and to process the telematics data collected through Allstate's Drivewise application and Esurance's DriveSense application." Compl. ¶¶ 174–75. Allstate and Arity "therefore breached the MNDA . . . ." *Id.* ¶ 176; *see also id.* ¶ 68 (Allstate "incorporated the trade secret information disclosed by RideMetric under the MNDA in order to reliably generate and use operation indicators and to integrate the technology into smartphone-based applications").

Defendants assert that those allegations are not "plausible." Mot. at 17. To the contrary, they are perfectly plausible. RideMetric alleges that the Inventors provided Allstate and Arity with detailed technical information under the MDNA, explaining how RideMetric's confidential technology would solve deficiencies that Allstate and Arity identified in their own products, such as detecting speeding without frequent use of GPS. *Id.* ¶¶ 58–61. RideMetric then alleges that Allstate and Arity abruptly went silent after several months of detailed discussions, and thereafter, the Drivewise and DriveSense apps appeared to incorporate features closely related to the

confidential technology that RideMetric disclosed. *Id.* ¶¶ 62–74. The plausible—indeed, likely—inference is that Allstate and Arity used RideMetric's technology in those applications.

In *Liion, LLC v. Vertiv Grp. Corp.*, after the plaintiff disclosed its proprietary information to the defendant pursuant to a non-disclosure agreement, the defendant canceled sales orders with the plaintiff and announced its own competing products that allegedly incorporated the plaintiff's proprietary information. No. 18-cv-6133, 2019 WL 1281977, at *1, *4, *6 (N.D. Ill. Mar. 20, 2019). The plaintiff sued for breach of the non-disclosure agreement. The defendant argued that breach claim was not sufficiently pled. The court rejected that argument, holding that the complaint did not need to allege the unique information provided under the agreement or how the defendant improperly disclosed that information. *Id.* at *4. Just as in *Liion*, RideMetric's allegations are more than sufficient to survive Defendants' motion to dismiss. Further, Defendants' own authority is unavailing, as the unambiguous language of the contracts at issue in those cases either precluded any breach claim, *see Stericycle, Inc. v. Carney*, No. 12-cv-9130, 2013 WL 3671288, at *5 (N.D. Ill. Jul. 12, 2013), or contradicted the plaintiff's allegations, *see Inteum Co., LLC v. Nat'l Univ. of Singapore*, No. 17-cv-1252, 2017 WL 6611961, at *3 (W.D. Wash. Dec. 27, 2017). Neither of those deficiencies is present here.

## IV. RIDEMETRIC HAS STATED A TRADE SECRET MISAPPROPRIATION CLAIM.

Defendants argue that RideMetric has not alleged its trade secrets with sufficient specificity to state an Illinois Trade Secrets Act claim (Count V). Mot. at 18–19. Not so. As the very cases Defendants cite make clear, "[c]ourts only dismiss a claim for lack of specificity on the pleadings in the most extreme cases." *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 921 (N.D. Ill. 2016) (quotation marks omitted). This is not an extreme case that warrants dismissal.

First, "courts have found allegations to be adequate in instances where the information and the efforts to maintain its confidentiality are described in general terms." *Covenant Aviation Security, LLC v. Berry*, 15 F. Supp. 3d 813, 818 (N.D. Ill. 2014); *see also Invado Pharm., Inc. v. Forward Sci. Distribution LLC*, No. 18-cv-2515, 2018 WL 5013556, at *3 (N.D. Ill. Oct. 16, 2018) ("[A] complaint need only identify the alleged trade secret in a general sense.").  "At the pleading stage, [the plaintiff] need not provide extensively-detailed descriptions of the nature of its trade secrets."  *Mighty Deer Lick, Inc. v. Morton Salt, Inc.*, No. 17-cv-5875, 2020 WL 635904, at *5 (N.D. Ill. Feb. 11, 2020).  That is "for the simple reason that such a requirement would result in public disclosure of the purported trade secrets."  *Covenant*, 15 F. Supp. 3d at 818 (quotation marks and citations omitted).

RideMetric alleges that its techniques related to "methods of generating accurate and reliable operation indictors using a smartphone's internal sensors," and "methods of integrating its inventions into smartphone mobile applications in the context of a usage-based insurance program" constitute trade secrets.  Compl. ¶¶ 182–83.  The complaint supplies additional detail on the subject matter of those trade secrets and the specific circumstances under which they were conveyed to Allstate and Arity, describing how "the Inventors provided Allstate with detailed presentations that described RideMetric's patented and trade secret protected smartphone-based telematics solutions to identifying vehicle operation related attributes."  *Id.* ¶ 55.

For example, in response to a December 17, 2015 communication from Tara Kozlowski, the Inventors provided a "revised test plan for Allstate's software that would improve Allstate's abilities to evaluate RideMetric's technology, as well as information about the internals of the [SDK] that RideMetric had developed."  *Id.* ¶ 60.  Further, RideMetric alleges that it

> provided Allstate and Arity with a revised test plan for evaluation of a software
> application that uses a phone's internal sensors to detect changes in the operational

> state of a vehicle. RideMetric also provided Allstate and Arity with a description of driving events for use in calculating a driving score. In addition, RideMetric provided Allstate and Arity with information about the SDK and RestFUL API (application programming interface) that RideMetric had developed and how to increase the reliability of the driving detection using a gyroscope.

*Id.* ¶ 174. The Inventors then explained how their "proprietary trade secret information" overcame deficiencies in the Drivewise application, including those "related to detecting when a vehicle is speeding without frequent use of GPS and lack of supporting detection of cornering." *Id.* ¶ 61. Finally, RideMetric identifies specific functionality in Defendants' applications that they developed using RideMetric's trade secrets. *Id.* ¶¶ 63–76.

Courts in this District repeatedly have held that such allegations are sufficient to survive a motion to dismiss. For example, in *Mission Measurement*, the Court sustained a trade secret misappropriation claim where the alleged trade secrets were described as "method[s]," "software design specifications," "reports and analytics," "concepts and calculations," and "product development plans" and where the complaint did not expressly state the methods, specifications, reports, or other alleged trade secrets. 216 F. Supp. 3d at 921; *see also Invado*, 2018 WL 5013556, at *3 (denying motion to dismiss where trade secret described as "manufacturing, distribution, pricing strategies, sales and industry relationships, and other business proprietary information not generally known to the public"); *GoHealth, LLC v. Simpson*, No. 13-cv-2334, 2013 WL 6183024, at *12 (N.D. Ill. Nov. 26, 2013) (denying motion to dismiss where trade secret described as "valuable and proprietary trade secret processes, systems, and technology" that allows a call center "to generate more and quicker responses"). The Court should reach the same conclusion here.

Second, Defendants' assertion that RideMetric's trade secret allegations are "inconsistent with its obligations under the MNDA," because purportedly it did not "identify" information it disclosed as trade secrets is a red herring. Mot. at 20. Under the MNDA, Allstate and Arity had an obligation to treat all information as confidential, whether or not specifically identified as such,

during the term of the MNDA. Compl. Ex. D §§ 1, 4. Also, even if there were additional requirements to "identify" trade secrets information after the term of the MDNA, RideMetric makes clear in its complaint that Allstate and Arity misappropriated its information during the MNDA's term. *E.g.*, Compl. ¶ 1 ("[A]t the same time Allstate and Arity were discussing the proprietary and confidential technical details of RideMetric's software with RideMetric, Allstate and Arity also were apparently implementing RideMetric's trade secrets and patented technology into their own software, including Allstate's 'Drivewise' application."). Thus, those purported requirements are irrelevant.

But even if RideMetric had some "identification" obligation to enjoy trade secret protection *during* the term of the MNDA, RideMetric's allegations show that it satisfied that obligation. *See id.* ¶ 55 ("*Under the protection of the MNDA*, the Inventors provided Allstate with detailed presentations that described RideMetric's patented and trade secret protected smartphone-based telematics solutions to identifying vehicle operation related attributes.") (emphasis added). Thus, this Court should reject Defendants' assertion that RideMetric somehow failed to comply with the MNDA's requirements and is not entitled to any trade secret protection.

## CONCLUSION

Defendants' motion to dismiss should be denied in its entirety.

20

DATED: February 12, 2021                    Respectfully submitted,


                                            By:  _/s/ Reginald J. Hill_____
                                                Reginald J. Hill (6225173)
                                                rhill@jenner.com
                                                Debbie L. Berman (6205154)
                                                dberman@jenner.com
                                                Joel T. Pelz  (3127591)
                                                jpelz@jenner.com
                                                Amit B. Patel (6309876)
                                                apatel@jenner.com
                                                Michael T. Werner (6314250)
                                                mwerner@jenner.com
                                                JENNER & BLOCK LLP
                                                353 North Clark Street
                                                Chicago, IL 60654-3456
                                                Telephone:  +1 312 222 9350
                                                Facsimile:  +1 312 527 0484

                                                *Counsel for Plaintiff*